IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BARBARA BRUNDO,  )   )          Plaintiff,     )   )       v.                   )   ) CHRIST THE KING CHURCH/PARISH, ) et al.,                       )   ) Defendants.  ) | 8:04cv209  MEMORANDUM AND ORDER |

This matter is before the court on filing no. 63, the Motion for Summary Judgment filed by the defendants, Christ the King Church/Parish (the "Church") and Christ the King Catholic School (the "School"); and filing no. 69, the Plaintiff's Motion to Deny Defendants' Request for Summary Judgment, filed by the plaintiff, Barbara Jane Mrzlak Brundo, Ed.D. The plaintiff filed this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. §§ 48-1101 *et seq.* ("NFEPA"); and the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat. §§ 48-1001 *et seq.* ("Nebraska Age Discrimination Act").

In filing no. 45, the court dismissed the plaintiff's claims based on violations of Title 92, Chapters 27 and 28 of the Nebraska Administrative Code ("NAC"). Those claims involved Nebraska Board of Education rules and regulations relating to standards of professional ethics and practices required of state-certified teachers and administrators, and procedures for handling violations of those standards. The rules published at 92 NAC 27 and 28 do not authorize a private cause of action which a complaining party may assert

in a federal court.  In filing no. 45, the court also dismissed the plaintiff's claims under the ADEA, Title VII, NFEPA and the Nebraska Age Discrimination Act against all individual defendants named in the plaintiff's complaint, as the individuals are not within the definition of "employers" who may be sued under the applicable statutes.  The court incorporates by reference and reaffirms herein the decisions expressed in filing no. 45.

The remaining defendants, the Church and the School, assert in filing no. 63 that there remain no genuine issues of material fact on which to proceed to trial, and that they are entitled to summary judgment as a matter of law.  Dr. Brundo resists the defendants' motion in filing no. 69.

### Summary Judgment Standard

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327(1986).  With respect to a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. See, e.g., Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323. In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." Id. at 586.

"[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a matter of law .... Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted). Accord Dico, Inc. v. Amoco Oil Co., 340 F.3d 525, 529 (8th Cir. 2003). "If the evidence is merely colorable ... or is not sufficiently probative ... summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

When reviewing the record in connection with a motion for summary judgment, the court may not weigh the evidence, determine credibility, or decide the truth of any factual matter in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; Tatum v. City of Berkeley, 408 F.3d 543, 549 (8th Cir. 2005). However, the court may consider only those materials which are admissible or usable at trial. See, e.g., Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001): "While we review the record in the light most favorable to [the nonmoving party], we do not stretch this favorable presumption so far as to consider as evidence statements found only in inadmissible hearsay." Accord Erickson v. Farmland

3

Industries, Inc., 271 F.3d 718, 727-28 (8th Cir. 2001) (unsworn out-of-court statements were hearsay and, as such, could not be considered at the summary judgment stage of the plaintiff's age discrimination case). In addition, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.

### Age Discrimination

The ADEA[1] protects employees and job applicants who are at least 40 years old from adverse employment actions based on their age. 29 U.S.C. § 631(a). Thus, the ADEA prohibits an employer from terminating an employee or failing or refusing to hire an applicant because of such individual's age. Id. § 623(a)(1). The plaintiff, born on May 18, 1946 (P. Dep. at 5:12-17)[2], was older than 40 years of age at all times pertinent to this litigation.

The court analyzes employment discrimination claims at the pretrial stage in accordance with the three-part burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Initially, the plaintiff must establish a prima facie case of discrimination. If the plaintiff satisfies the requirements of a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If the defendant articulates such a

---

[1] In all material respects, the court considers the Nebraska Age Discrimination Act the same as the ADEA for purposes of this Memorandum and Order.

[2] "P. Dep." refers to the plaintiff's deposition, filed as an exhibit to the defendants' Index of Evidence (filing no. 66) in support of summary judgment.

reason, the plaintiff must respond with sufficient evidence that the defendant's proffered reason was not true, and instead was really a pretext for intentional discrimination. See, e.g., Edmund v. MidAmerican Energy Company, 299 F.3d 679, 683 (8th Cir. 2002). Accord Sandstad v. C.B. Richard Ellis, Inc., 309 F.3d 893, 896-97 (5th Cir. 2002), cert. denied, 539 U.S. 926 (2003); Garrett v. Hewlett-Packard Company, 305 F.3d 1210, 1216 (10th Cir. 2002).

Under the McDonnell Douglas analysis, a party's failure to meet that party's burden of production at the summary judgment stage will end the matter, and judgment will be entered for the other party. Bowen v. Celotex Corp., 292 F.3d 565, 566 (8th Cir. 2002). On the other hand, if summary judgment is denied, the burdens of production "drop out" when the case proceeds to trial and is submitted for decision. Id.

The plaintiff states that this case is "about unfair hiring practices," specifically, hiring decisions based on age discrimination and unlawful retaliation for protected activity (P. Dep. at 9:20-23.) To establish a prima facie case of discriminatory hiring in violation of the ADEA, the plaintiff must demonstrate that:

    (1) she belonged to the protected class;

    (2) she was qualified for the position(s) for which she applied;

    (3) she was not hired for the position(s) despite her qualifications; and

    (4) the employer filled the position(s) with person(s) sufficiently younger to permit an inference of age discrimination.

Schiltz v. Burlington Northern R.R., 115 F.3d 1407, 1412 (8th Cir. 1997).

### Retaliation

The plaintiff also asserts that the defendants' failure to hire her constituted unlawful retaliation in violation of Title VII and NFEPA.³ 42 U.S.C. § 2000e-3(a) of Title VII states in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

"To establish a prima facie case of Title VII retaliation, [the plaintiff] must show:

(1)     [That] she engaged in activity protected by Title VII;

(2)     [That] she suffered an adverse employment action; and

(3)     [That] a causal connection [existed] between her protected activity and the adverse employment action."

Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001), *citing* Bogren v. Minnesota, 236 F.3d 399, 407 (8th Cir. 2000).  Accord Griffith v. City of Des Moines, 387 F.3d 733, 738 (8th Cir. 2004)   A failure to hire may constitute an adverse employment action in a retaliation claim under 42 U.S.C. § 2000e-3. Kobrin v. University of Minnesota, 34 F.3d 698, 704-05 (8th Cir. 1994), *citing* Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 785-86 (9th Cir. 1986).

---

³For the purposes of this Memorandum and Order, Title VII and NFEPA are indistinguishable.  The Nebraska Supreme Court has emphasized that NFEPA should be construed consistently with Title VII.  "Since the Nebraska Fair Employment Practice Act is patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (1988), it is appropriate to consider federal court decisions construing the federal legislation." City of Fort Calhoun v. Collins, 500 N.W.2d 822, 825 (Neb. 1993).

As with an ADEA claim, "[t]o analyze a claim of retaliation under Title VII, we apply the McDonnell Douglas three-part burden shifting analysis .... Absent direct evidence of discrimination, we ask first whether the plaintiff presented a prima facie case of retaliation, next whether the defendant rebutted the resulting presumption of retaliation by advancing a legitimate reason for its challenged behavior, and finally whether the plaintiff refuted the defendant's proffered reason with sufficient evidence of pretext."  Eliserio v. United Steelworkers of America Local 310, 398 F.3d 1071, 1078 (8th Cir. 2005).

### The Record

The plaintiff served as the principal of Christ the King School from October 13, 1986, until the close of the school year in June of 1992.  Later, the School rehired the plaintiff under a one-year contract as a Religious Education Coordinator for the 1994-95 school year.

The plaintiff alleges that during 1991-92, she was forced to resign her position as principal.  In addition, after the 1994-95 contract expired, the School did not renew her contract for the position of Religious Education Coordinator, and thereafter, the School declined to hire the plaintiff for various advertised openings through April of 2002, all because of her age and in retaliation for charges she had previously filed with the Nebraska Equal Opportunity Commission ("NEOC").  In the plaintiff's view, every time the School failed to hire her for an advertised position, that failure to hire constituted part of a continuing pattern of discrimination.  (P. Dep. at 10:11:17.)

In her complaint (filing no. 1 at 11), the plaintiff lists the ages of the applicants hired by the School instead of the plaintiff, as follows: age 26 (1 teacher); 27 (2 teachers); 39 (1 teacher and 1 assistant); 43 (1 assistant); 53 (1 teacher); 55 (1 teacher), and two persons

ages unknown. Thus, the plaintiff's prima facie case of age discrimination is questionable insofar as a prima facie case requires evidence that the employer filled the positions with persons sufficiently younger than the plaintiff to permit an inference of age discrimination. Hammer v. Ashcroft, 383 F.3d 722, 726 (8th Cir. 2004); Schiltz v. Burlington Northern R.R., 115 F.3d at 1412.

As for the plaintiff's retaliation claim, the record indicates that the plaintiff filed five charges with the NEOC against Christ the King Church, Parish and/or School beginning in 1998. (P. Dep. at 27:20-28:13; 30:2-20;44:18-24.) The record also establishes that the School did not rehire the plaintiff after 1995. However, the causal connection between those events is questionable, as discussed below.

**Pretext**

Even if the court assumes that the plaintiff has established a prima facie case of age discrimination or retaliation, the plaintiff has not succeeded in rebutting, as pretextual, the legitimate, nondiscriminatory reason articulated by the defendants for the School's hiring decisions. If an employer produces evidence of a legitimate, nondiscriminatory reason for an adverse employment decision, the employee may avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that an unlawful criterion was a determinative factor in the adverse employment decision. Mayer v. Nextel West Corp., 318 F.3d 803, 807 (8th Cir.), cert. denied, 540 U.S. 823 (2003). Accord Cherry v. Ritenour School Dist., 361 F.3d 474, 478 (8th Cir. 2004) (affirming summary judgment in favor of the employer).

8

In a letter dated April 16, 2002, the School's principal and a pastor responded to the plaintiff's most recent application for employment with the following explanation: "Please understand that given your past employment history with Christ the King School, you will not be pursued as a candidate for any of the advertised teaching positions which you referenced in your letter. Ultimately, since your previous employment at Christ the King School resulted in a negative impact on the school and religious community, we do not believe that it is in your or the school's best interest to pursue you as a candidate." (Filing no. 66, Exh. 3 to P. Dep.) The School's principal reiterated that reason in her Affidavit in support of the defendants' summary judgment motion, i.e., that the School chose not to hire the plaintiff because her previous employment had affected the School and its religious community in a negative way. See Affidavit of Laraine C. Conway (attachment 1 to filing no. 66.)

In her deposition, the plaintiff candidly acknowledges that reasons quite different from her age and her NEOC charges caused her to become unwelcome as an employee of the School. As the plaintiff explained, "if we go all the way back to 1992," she had "objected to behaviors on the part of the board" and to "decisions of the pastor." (P. Dep. at 9:24-10:4.) In 1997 or 1998, she "complained to the State Department of Education about misinformation being placed in the [School] records." (P. Dep. at 10:5-7.)

According to the plaintiff, Dr. Stephen Coffey forced her to resign her position as principal and she "now understand[s] why." (P. Dep. at 15:3-7.) As the plaintiff recounts the events, Dr. Coffey came to her office in the middle of the school day and needed something done "right now." The plaintiff responded: "have you looked at my calendar?" The plaintiff could not "meet whatever it was that he wanted." (P. Dep. at 15:7-17.) When

9

Dr. Coffey came back, the plaintiff told him: "I need a sabbatical." He left and returned with another pastor. The plaintiff informed them that they were "working [her] to the point that [she] couldn't meet all of [their] expectations." They left. Shortly thereafter, the plaintiff was directed to resign. (P. Dep. at 15:20-16:22.) She wrote her resignation on December 27, 1991 effective June of 1992. (P. Dep. at 17:16-25.)

However, according to the plaintiff, the "real" reason for her forced resignation related to her work with a pro bono attorney to find a way to detect pedophiles in applications for prospective employment. (P. Dep. at 18:16-20:20.) The same subject (screening out pedophiles) "came up again" during a class trip when the plaintiff was working on parental permission slips for class field trips. (P. Dep. at 20:14-17.) The plaintiff's efforts to screen pedophiles from the School's employment applicant and parent populations discomfitted and embarrassed the archdiocese. So the School informed the plaintiff that she "could be in any other position" but not the School principal. (P. Dep. at 20:4-20.) Later the plaintiff noticed that the School had discontinued using the "insert [the plaintiff] had designed for sexual abuse allegations and alcohol abuse" from the "teacher applications that they were using." (P. Dep. at 29:2-7.)

As for "why they retaliated" (P. Dep. at 35:11), the plaintiff explains that she is a strict Catholic who stands up for what she believes and has a different value system from some other School personnel and parish members. (P. Dep. at 35:5-36:19.) Such differences in value systems are reflected, for example, in the School's removal of the references to sexual abuse charges from the teacher application insert designed by the plaintiff. (P. Dep. at 37:1-4.)

In addition to the plaintiff's concern about pedophiles, she "was angry that a board member put a beer can in his kid's lunch, and [she] chastised him for that." (P. Dep. at 57:5-10.) There was another incident in which the plaintiff perceived a bag of powdered sugar as a "look-alike drug" and "flushed it down the commode." (P. Dep. at 57:12-20.) In addition to taking a "hard line" on "pedophilia issues, in addition to drugs and alcohol ... there was a huge computer issue" which the plaintiff believes "was fabricated to cover the pedophilia issue, but it was still a big issue." (P. Dep. at 69:9-13.) Described by the plaintiff as an issue of "governance," (id. at 69:22), the computer dispute (IBM vs. Apple) apparently evolved into a power struggle between the plaintiff and a member of the School's board of directors. (P. Dep. at 69:21-72:2; 72:21-7.) The plaintiff had solicited ten free computers from Apple Computer by representing that the School would spend considerably more later, whereas the president of the School's board of directors had a friend at IBM and preferred that company. The dispute over which type of computers the School should use escalated, causing negative interactions.

While employed as Religious Education Coordinator, the plaintiff soon came to believe herself far more qualified than the person serving as the School's principal at the time. Accordingly, the plaintiff felt quite justified in refusing to work cooperatively on projects the principal suggested they share. (P. Dep. at 61:2-63:8.)

The picture that emerges from the plaintiff's version of events is that her personality, including her vigilance, intensity and tenacity, created discord, tension and distress at the School. The plaintiff worked in a school environment in which others were more relaxed than the plaintiff about issues of importance to the plaintiff. In light of the friction and

11

personality conflicts which arose during the plaintiff's employment, the School's decision-makers chose not to renew the relationship.

Mere personality conflicts are not actionable under the laws prohibiting employment discrimination. See, e.g., Selenke v. Medical Imaging of Colorado, 248 F.3d 1249, 1261 (10th Cir. 2001) (plaintiff's personality conflicts with other employees furnished a legitimate reason for discharge and did not constitute pretext for alleged discrimination); Gray v. Arkansas Department of Housing & Urban Development, 310 F.3d 1050, 1052 (8th Cir. 2002), *citing* Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1108-09 (8th Cir. 1998) (discrimination law does not prohibit employment decisions based on job performance, erroneous evaluations, personality conflicts, or even unsound business practices). See also Waggoner v. City of Garland, Tex., 987 F.2d 1160, 1166 (5th Cir. 1993): "[Co-workers] may have disliked [the plaintiff]; they may have even sought to concoct a reason for his discharge. Yet, unless [the plaintiff] can connect that dislike to his age, there is no genuine issue of material fact regarding age or age based discrimination." Accord Barnett v. Department of Veterans Affairs, 153 F.3d 338, 342-43 (6th Cir. 1998), cert. denied, 525 U.S. 1106 (1999) (personal dislike is not the same as discriminatory animus).

The plaintiff's burden in resisting summary judgment is to point to sufficient evidence on which a judge or jury could find, by a preponderance of the evidence, that an illegal criterion constituted the motivating factor, or one of the motivating factors, for the challenged employment decisions. Kohrt v.MidAmerican Energy Co., 364 F.3d 894, 897 (8th Cir. 2004). The plaintiff has failed to do so. In fact, her testimony supports the defendants' articulated reason for the consistent decisions not to hire the plaintiff. The

record indicates that the relationship between the plaintiff and the defendants deteriorated over time because of differences in values and beliefs and because of personality conflicts.

## Conclusion

The summary judgment record contains no evidence on which a judge or jury could reasonably find that the plaintiff's age or previous charges of discrimination played a part in the defendants' hiring decisions as to the plaintiff. The record contains a substantial body of uncontroverted evidence that the defendants declined to hire the plaintiff for lawful reasons, and the record lacks any evidence supporting an inference of unlawful discrimination. Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 996 (2002). While summary judgment is to be used sparingly in employment discrimination cases, summary judgment is appropriate when, as in this case, a party has failed to establish a genuine issue of material fact on which to proceed to trial.

THEREFORE, IT IS ORDERED:

1. That filing no. 63, the defendants' Motion for Summary Judgment, is granted;

2. That filing no. 69, the plaintiff's opposition to summary judgment, is denied; and

3. That a separate judgment will be entered accordingly.

DATED this 29th day of September, 2005.

BY THE COURT:

s/Laurie Smith Camp
Laurie Smith Camp
United States District Judge